# IN THE COURT OF APPEALS OF IOWA

No. 21-0353
Filed June 15, 2022

IN RE THE MARRIAGE OF MELISSA K. KAPPELMAN
AND GEORGE C. KAPPELMAN

Upon the Petition of
**MELISSA K. KAPPELMAN,**
        Petitioner-Appellant,

And Concerning
**GEORGE C. KAPPELMAN,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.


        Melissa Kappelman appeals the physical care provision from a dissolution

decree. **AFFIRMED.**



        Shanon M. Hounshell of SMH Law, PLLC, Ankeny, for appellant.

        Jami J. Hagemeier of Hagemeier Law, P.L.C., Clive, for appellee.


        Considered by Bower, C.J., Schumacher, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**BOWER, Chief Judge.**

Melissa Kappelman—now known as Melissa Ausberger—appeals the physical care provision of the decree dissolving her marriage with George Kappelman. We affirm.

### I. Background Facts and Proceedings

Melissa and George married in 2003. The couple have three children, born in 2004, 2007, and 2012. The parties separated in early 2019. In April, Melissa obtained an apartment in a nearby town with her then-boyfriend; they still lived there at the time of trial. George remained in the family home; also living there are George's new girlfriend and their child, George's father, and Melissa's brother.

In September, Melissa filed a petition for dissolution of marriage. Melissa requested temporary and permanent physical care of the children. The parents disagreed which school system the children should attend. Melissa enrolled the children in schools near her home without consulting George, and George filed an application for an emergency hearing on temporary custody. The court's October 2019 ruling on temporary matters ordered joint legal custody, placed the children in George's physical care, and set a visitation schedule for Melissa. The children returned to their previous school district.

At the dissolution trial in September 2020, Melissa sought legal custody and physical care of the children with limited visitation time for George. George asked for physical care of the children with liberal visitation for Melissa. The children requested joint legal custody and variations of splitting physical care time between the parents. Two children expressed a preference to attend the school where Melissa lived.

The court heard testimony from the parents, their friends and family, and a behavior health intervention services specialist who had been working with the family for the children's benefit since January 2019. The specialist stated she thought Melissa and George were each good parents but "there's room for improvements on both ends." She emphasized the children were her focus and the parents needed to find a way to set aside their feelings and do what is best for the children.

In February 2021, the court issued its findings of fact, conclusions of law, and decree of dissolution of marriage.[1] The court ordered joint legal custody of the children, but found George and Mellissa's "struggles to communicate and cooperate with one another" weighed against shared physical care of the children. The court acknowledged each parent's concerns about the other's parenting ability and observed "(a) that both parents have actively cared for the children before and since the separation, (b) that this has not resulted in any physical harm to the children, and (c) that the children still want both parents involved in their lives." The court found "both parties are equally credible and equally capable of effectively ministering to the long-range best interests of the children." The court awarded physical care to George with liberal visitation for Melissa "in the interests of stability and continuity."

---

[1] Melissa filed a motion to reopen the record in January 2021, offering exhibits relating to concerns of behavior in George's home. These exhibits were not admitted before the dissolution decree was filed. Melissa raised the issue again in a motion to modify the decree, but she filed her notice of appeal before the court could rule, which divested the district court of jurisdiction. Because the evidence was not admitted in the district court, it is not part of the record, and we cannot consider it here.

Melissa appeals, asserting she should have physical care of the children.

## II. Standard of Review

"We review dissolution cases de novo." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). "[W]e give weight to the trial court's factual findings, especially with respect to the credibility of the witnesses." *Id.* (citation omitted).

## III. Analysis

> Physical care issues are not to be resolved based upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*. The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity.

*In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). We consider the factors listed in Iowa Code section 598.41(3) (2020) and facts and circumstances set forth in our case law. *See id.* at 696. When the court determines joint physical care is not in the best interests of the children, it must choose with which parent the children's physical care should be placed. *Id.* at 700. The court must consider who will best support the other parent's relationship with the children. *Id.* Continuity and stability in the children's care are primary factors in the court's decision. *Id.* Yet, the court must also consider the strength of the existing emotional bonds between children and parent. *Id.*

Both parents clearly love the children. However, their differing parenting styles do not blend well. Each has their strong points. George has a strong support system with both his and Melissa's extended families who are comfortable in his home. Melissa is less focused and structured but does better at listening to the children's concerns and focusing on their needs. Melissa is proactive about getting the children evaluated and on any needed medication.

Each parent has weaknesses. George can react harshly at times and has placed a significant amount of caregiving responsibility on his new girlfriend despite her conflicts with the middle child. George is more skeptical and prefers non-medication alternatives.[2] Melissa does not seem to recognize the children need and want both parents in their lives equally.

George and Melissa both work full time. George goes to work at 8:00 a.m., usually returning home between 4:00 and 6:00 p.m. Melissa starts later in the morning and is done with work at 7:00 p.m. At the time of trial, the children were attending school virtually due to the COVID-19 pandemic, supervised by adults living in the home. Because Melissa's work schedule conflicted with the visitation schedule under the temporary order, George agreed the children would be with Melissa most weekends.

We, like the district court, recognize the concerns expressed regarding each parent's care. Each parent is trying to be a good parent, but they simply do not agree on the form that parenting takes. George has a stable, if crowded, home in the children's long-time school district with family available to help supervise the children as needed. He has also shown a willingness to support the children's relationship with their mother and a greater degree of flexibility regarding visitation. Melissa has shown stronger protective actions.

---

[2] For example, during the separation—without doctor approval—George stopped giving the middle child prescribed medication "off and on. Until my lawyer advised me not to." He took the children to a new doctor for a more recent evaluation and has agreed he will give the children whatever medication the new doctor prescribes.

Based on the record before the district court, we agree George has demonstrated greater stability and continuity for the children and has better supported the children's relationship with the other parent. We affirm the grant of physical care to George.

George requests an award of his appellate attorney fees and that costs be taxed to Melissa. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (internal quotation marks and citations omitted). Although George asserts Melissa has "a far superior ability to pay," we do not find that to be the case. We decline to award appellate attorney fees. We assess costs equally between the parties.

**AFFIRMED.**